**In re Cecil C. CHARLES, Debtor.**

**Arthur F. KERCKHOFF, Jr., Plaintiff,**

**v.**

**Cecil C. CHARLES and Julie S. Charles, Defendants.**

**Bankruptcy No. 87–00270–DPM. Adv. No. 87–0084.**

United States Bankruptcy Court, E.D. Missouri, E.D.

May 31, 1989.

Leonard Komen, St. Louis, Mo., for plaintiff.

Mark G. Zellmer, St. Louis, Mo., for defendants.

James S. Cole, St. Louis, Mo., Asst. U.S. Trustee.

## MEMORANDUM OPINION

DAVID P. McDONALD, Bankruptcy Judge.

### JURISDICTION

This Court has jurisdiction over the parties and subject matter of this proceeding

pursuant to 28 U.S.C. §§ 1334, 151, and 157 and Local Rule 29 of the United States District Court for the Eastern District of Missouri. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(I) and (J), which the Court may hear and determine.

## PROCEDURAL BACKGROUND

Arthur F. Kerckhoff, Jr., Plaintiff, filed this adversary complaint number 87–0084(2) against Cecil C. Charles and Julie S. Charles, Defendants, in an effort to obtain a judgment against the Defendants and to deny discharge of the sole Debtor, Cecil C. Charles, pursuant to 11 U.S.C. § 523 and 11 U.S.C. § 727. On July 22, 1988, the Defendants filed a Motion By Defendants, Cecil C. Charles And Julie S. Charles, For Partial Summary Judgment Against The Claim Of Plaintiff, Arthur F. Kerckhoff, Jr. For Certain Accounts Receivable. The Plaintiff filed his Response to Motion By Defendants For Partial Summary Judgment Against Claim Of Plaintiff and his Affidavit on July 27, 1988.

After extensive negotiations the parties entered into a partial settlement agreement, which was approved by the Court on October 5, 1988. As a result of the settlement, the Plaintiff dismissed all motions, objections and Complaint number 87–0084, except as it pertained to alleged ITT accounts. The Plaintiff submitted his Requests For Admissions Directed To Defendant Cecil C. Charles on January 6, 1989. Oral argument on the Defendants' Motion For Summary Judgment was continued on several occasions upon the request of parties. Argument of counsel was heard on May 22, 1989.

## FACTUAL BACKGROUND

With the exception of the interpretation of the Settlement Agreement and in particular paragraph 14, the facts, as set forth in Defendants' Motion, are not in dispute. The assets of Sterling Distributing Company, owned by Arthur F. Kerckhoff, Jr., were sold to Cecil Charles Distributing Company, Inc., which was owned by Cecil C. Charles, on July 24, 1984. Such sale of assets was undertaken by an Assets Purchase Agreement dated July 24, 1984. Prior to the execution of the sale agreement, the Plaintiff sold certain accounts receivable to ITT with recourse. On or after July 25, 1984, certain of those accounts receivable sold by Kerckhoff to ITT went into default and upon request by ITT, Mr. Kerckhoff, Jr. repurchased these accounts from ITT, hereinafter referred to as "ITT Buybacks". It is these "ITT Buybacks" which the Plaintiff claims are due and owing from Cecil C. Charles by virtue of the Assets Purchase Agreement. Paragraph 14 of the Assets Purchase Agreement provides:

"14. *Accounts Receivable*—Seller retains all rights to accounts receivable on its books at Closing and an itemized list of these receivables is attached hereto as Exhibit S. After Closing, Purchaser shall remit to Seller all payments on the aforementioned accounts receivable on a daily basis. All payments received from an obligor shall be credited to the oldest invoice outstanding, regardless of which invoice the obligor might direct that the invoice be applied, unless an honest dispute exists as to a particular invoice and the obligor disputes payment in writing, or unless prior consent from Arthur Kerckhoff, Jr. or Arthur Kerckhoff, III, has been received for a sale of whole goods financed by ITT Commercial Finance Corp., in which case the payment may be credited to a later invoice. Seller shall be allowed to inspect the records of Purchaser on a daily basis in order to investigate the accuracy of Purchaser's accounting for the aforesaid accounts receivable and payments received thereon. After Closing, Seller may find it necessary to bill obligors for additional amounts owed as a result of transactions which occurred prior to Closing. Seller shall be allowed to send these invoices using the name 'Sterling Distributing Company' provided notice is given to Purchaser and evidence is provided that the bill is being generated as a result of a transaction which occurred prior to Closing."

All amounts considered to be "ITT Buybacks" became due and owing to Kerckhoff or Sterling only on or after July 25, 1984 and were not amounts listed as part of the

accounts receivable on Exhibit S to the Assets Purchase Agreement of July 24, 1984. In his response to the Motion For Summary Judgment, the Plaintiff answered:

"10. *AFK admits that the ITT buybacks are not technically accounts receivable* but states further that even though they are not accounts receivable, Cecil Charles was still obligated to apply payments he received from dealers to the accounts listed as ITT Buybacks if the ITT Buyback account was the oldest outstanding invoice and Charles is, along with his wife, liable to AFK to the extent he failed to so apply payments he received." (Emphasis added).

## DISCUSSION

· Summary judgment is appropriate in this case because no genuine issues of material fact exist. Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, as incorporated into this proceeding by Bankruptcy Rule 7056. According to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment

"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In recent years the United States Supreme Court issued a series of cases which openly encouraged trial courts to dispose of litigation at the summary judgment level. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio, Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986). In *City of Mount Pleasant v. Associated Elec. Coop.*, 838 F.2d 268 (8th Cir.1988), the Eighth Circuit acknowledged the impact of the Supreme Court's trilogy of summary judgment cases, stating:

"[2] In *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court held that the burden on the party moving for summary judgment is only to demonstrate, *i.e.*, '[to] point[ ] out to the District Court,' *id.* 106 S.Ct. at 2554, that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). If the respondent fails to carry that burden, summary judgment should be granted."

In the instant case, the Debtors met their burden by demonstrating that the record does not disclose a genuine dispute on a material fact. Paragraph 14 of the Assets Purchase Agreement clearly provided that the Seller (Sterling Distributing Company) retained all rights to accounts receivable on its books as of July 24, 1984 as itemized in Exhibit S. The "ITT Buybacks" could not have come into existence until on or after July 25, 1984 and were not listed as part of the accounts receivable in Exhibit S. Paragraph 14 further provides:

"... After Closing, Purchaser shall remit to Seller all payments on the aforementioned accounts receivable on a daily basis. All payments received from an obligor shall be credited to the oldest invoice outstanding, regardless of which invoice the obligor might direct that the invoice be applied...."

This arrangement to apply the payments to the oldest outstanding balance clearly referred to the accounts receivable as listed in Exhibit S and not the "ITT Buybacks", which did not even exist.

The Plaintiff attempts to meet his burden by arguing that we should look beyond the written document to determine the intent of the Seller. Mr. Kerckhoff seeks to show by affidavit and/or oral testimony

that he intended the provisions of Paragraph 14 to extend to the "ITT Buybacks". Paragraph 14 is sufficiently clear that such parol evidence is inadmissible to alter, aid, contradict or vary the terms of the Assets Purchase Agreement.[1] Without the admission of parol evidence to clarify the intent, there are no genuine disputes remaining, since the clear meaning of the Assets Purchase Agreement extends only to the accounts receivable listed in Exhibit S and not the "ITT Buybacks".

The Plaintiff has failed to set forth affirmative evidence, specific facts showing that there remains genuine dispute on the issue of "ITT Buybacks" under the Assets Purchase Agreement. Accordingly, the Court shall this date enter an ORDER granting the Defendants' Motion For Partial Summary Judgment Against The Claim Of Plaintiff, Arthur F. Kerckhoff, Jr. For Certain Accounts Receivable.

---

1. It should be noted that the Assets Purchase Agreement contains the following standard "Entire Agreement" clause:

"19. *Entire Agreement; Amendments*—This Agreement, including the Exhibits and other writings referred to herein, contains the entire understanding of the parties with respect to its subject matter. There are no restrictions, agreements, promises, warranties, covenants or undertakings other than those expressly set forth herein or therein. This Agreement supersedes all prior agreements and undertakings between the parties with respect to its subject matter. This Agreement may be amended only by a written instrument signed by both parties hereto. Any condition to a party's obligation to perform hereunder may be waived by such party."